# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | |
|---|---|
| **James R. Wood,** ) | |
|     **Plaintiff,** ) | |
| ) | |
| v. ) | Case No.1:23cv462 (RDA/JFA) |
| ) | |
| **Eric Yancey, MD, et al.,** ) | |
|     **Defendants.** ) | |

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Steve Herrick's Motion to Dismiss (the "Motion"). Dkt 41. This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the Motion together with the Second Amended Complaint (Dkt. 19), Defendant Herrick's Memorandum in Support (Dkt. 43), and Plaintiff's Opposition (Dkts. 4,6 47), this Court GRANTS the Motion for the reasons that follow.

### I. BACKGROUND

### A. Procedural Background

James R. Wood ("Wood" or "Plaintiff"), a Virginia inmate, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 alleging that he had been denied adequate medical care while in the custody of the Virginia Department of Corrections ("VDOC") at the Deerfield Correctional Center ("DCC"). Dkt. 1. The Court screened the complaint, noted deficiencies, and granted Plaintiff leave to amend. Dkt. 10. Plaintiff filed his first amended complaint on October 16, 2023. Dkt. 14-1. The Court screened the amended complaint, noted deficiencies, and again granted Wood leave to amend. Dkt. 15. Wood filed his Second Amended Complaint ("SAC"), the operative complaint, on April 19, 2024. Dkt. 19. The SAC named six defendants: Eric Yancey, MD; Alvin

Harris, MD; K. Sharma, MD; NP Steven Marranos,[1] FNP, Nurse Practitioner; Antinette D. Adams, MD; and Steve Herrick, MD.[2] *Id.*

In his Second Amended Complaint, Plaintiff alleges two claims:

I. Dr. Eric Yancey, Dr. Alvin Harrison, Dr. K. Sharma, Nurse Practitioner Marrano [Marinos], and Dr. Adams violated Plaintiff's Eighth Amendment right to adequate medical care because they were deliberately indifferent to Wood's "serious medical [podiatry] needs, and medical boots and orthotics, which caused [Wood] physical mental and emotional suffering in violation of [Wood]'s 8th Amendment rights by not providing proper, timely or adequate medical care or services . . . ." *Id.* at 19.

II. Defendant Herrick violated Wood's Eighth Amendment right to adequate medical care because he was "deliberately indifferent to Wood's serious medical [podiatry] conditions and his need for necessary medical boots or

---

[1] Plaintiff misspelled Defendant Marranos' name throughout the SAC. Dkt. 27. The docket was amended on April 2, 2025 to show the correct spelling as Steven Marinos. Dkt. 61.

[2] Defendants Herrick, Yancey, Dr. Harrison, Dr. Sharma, and Marinos have been served but Dr. Adams has not. On August 14, 2024, the Clerk of Court sent a Notice of Lawsuit and Request for Waiver of Service of Summons ("Notice") addressed as set out in the SAC: Antinette D. Adams, MD Specialist, Vital Core, 137 Baker Street Emporia, Virginia 23847. Dkt. 22 at 1. The Notice was returned on August 26, 2024, and stamped "Return to Sender, Not Deliverable as Addressed, Unable to Forward." Dkt. 23. On March 13, 2025, the Clerk of Court issued a summons to Defendant Adams, via the U.S. Marshall's Service, at the same address. Dkt. 55, 56. The summons was returned unexecuted on April 1, 2025. Dkt. 60. The unexecuted summons indicated that the "address is incorrect, 137 Baker Street Emporia, VA. 23847 is a hair salon, Adams Comprehensive Foot Care went out of business." Dkt. 60 at 1. Pursuant to the Federal Rules of Civil Procedure, "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). Though under 28 U.S.C. § 1915(d) a court is required to assist *pro se* litigants proceeding *in forma pauperis* with service of process, Plaintiff bears the burden of identifying an address where service can properly be made. *See Skaggs v. Clark*, 2015 WL 269154, *3 (S.D. W. Va. Jan. 21, 2015). Here Court's efforts at perfecting service were unsuccessful. However, it is not the Court's responsibility for providing the appropriate addresses for serving a defendant. *See Metcalf v. Geo Group*, 2021 WL 1400115, *1-2 (E.D. Va. Mar. 23, 2021) (citing *Lee v. Armontrout*, 991 F.2d 487, 489 (4th Cir. 1993)). Plaintiff has not provided the necessary information to perfect service, *i.e.*, an address where Defendant Adams can be served. Plaintiff will be directed to show cause within twenty-one days as to why Defendant Adams should not be dismissed without prejudice for lack of service; and Plaintiff is advised that if service on Defendant Adams through this Order is unsuccessful and that Defendant Adams is not otherwise served within 90 days of an order being entered, that Defendant Adams will be dismissed from the instant action without prejudice. *See* Fed. R. Civ. P. 4(m).

orthotics which caused [Wood] physical, mental, and emotional injury, harm, and suffering." Derrick violated "[Wood]'s 8th Amendment rights by not providing proper, timely, and adequate or corrective measures to [Wood]'s medical care and services once they were notified that [Wood] was not receiving proper medical care . . . ." *Id.* at 19-20.

On November 22, 2024, Defendant Herrick filed the instant Motion to Dismiss. Dkts. 41, 43. On November 25, 2024, the Court advised Plaintiff, in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), that Defendant Herrick had filed a motion to dismiss, and that Plaintiff was entitled to file a response opposing the motion to dismiss by filing counter-affidavits, statements, exhibits or other legal or factual material that supports his position in the case. Dkt. 44. On December 30, 2024, Plaintiff responded to Defendant Herrick's motion to dismiss. Dkts. 46, 47. No reply was ever filed.

### B. Factual Background

The following summary, in the light most favorable to Wood, is a statement of facts based upon of the allegations in the SAC related to the claim against Defendant Herrick.

1. Wood is an inmate in the custody of the VDOC and was transferred to the DCC on October 25, 2018. Dkt. 19 ¶¶ 14, 16.

2. Prior to his incarceration, Wood was diagnosed with multiple ankle and foot ailments, which he enumerated as "posterior tibial tendon pain, sinus tarsi with subtalar joint range of motion, ankle joint range of motion limited in dorsiflexion without crepitation, rectus arch structure non-weight bearing with hallux abduction on the hindfoot, posterior tibial tendonitis and capsulitis to the subtalar joint and posterior tibial tendon dysfunction with osteoarthritis." Wood had been provided with orthotic footwear and an ankle brace for these conditions and received corticosteroid injections. *Id.* at ¶ 14.

3. During his Medical Classification meeting on November 27, 2017, soon after he entered the VDOC, Wood indicated that he had a history of asthma, since 1995; sleep apnea/CPAP;

a failed gastric bypass; arthritis (fingers, wrist); issues with his "ankles, feet & back" since 2014; surgery for his rotator cuff surgery in 1998/2015, big toe in 2004; abdominal in 2005, and hernias in 2005, 2010, and 2017. Dkt. 3 at 7. At that time he was 6'1 and weighed 263 pounds. *Id.*

4.  Wood saw the podiatry specialist, Dr. Adams, on October 25, 2018, regarding callous on his right foot, which had been a problem for three years. During the consultation, Wood complained of "discomfort [in his] plantar longitudinal arch" in both feet. Dkt. 3 at 8.

5.  On May 2, 2019, Plaintiff submitted a request to the medical unit to see "a doctor about the pain in [his] arches due to [his] weight and flat feet . . . to see if there are any prescribed medical insoles that would help." *Id.* at 9. Wood was seen by the medical unit on May 3, 2019. He was wearing boots at that time, had pain in his arches, and wanted to see about getting a "new pair of boots" or "specialty shoes." *Id.* at 10.

6.  On May 8, 2019, Wood was seen again by the medical unit. New insoles were ordered and the process for new shoes was started. *Id.* at 10. On May 21, 2019, Wood was seen by the medical unit for "back pain," and was prescribed Motrin. *Id.*

7.  On May 25, 2019, Wood saw Dr. Adams for the pain in his feet due to his flat feet and his fallen arches. "She noted pain in [Wood]'s tendon, flat feet, hammer toe, and heavy callous. . . . [She] removed the callous and ordered the institution to provide [Wood] with custom orthotic boots." Dkt. 19 ¶ 17.

8.  Wood was seen by medical unit on July 11, 2019, and complained that he had been using the orthotics for about a month and that they were not helping, his pain level when walking was "6/10." *Id.* at 12. On August 8, 2019, Wood was given a steroid injection in his right ankle for chronic pain by Dr. Adams. *Id.* at 15. Notes from the medical unit on August 8, 2019 reflect

4

that the "UMD[3] completed for custom orthotics by Dr. Adams." *Id.* The notes also indicate that the medical unit was "awaiting approval by the UMD for custom orthic devices." *Id.* at 13.[4]

9. On August 15, 2019, Dr. Yancey submitted a referral request for "custom made orthotics devices /1 pair," and in support of that request he stated, "bilateral flat feet with digital deformities and tried pre-fabricated orthotic devices, with minimal improvement in pain, offender is 6'1" and 339 pounds." *Id.* at 16. His supervisor approved the request.

10. On September 11, 2019, Dr. Yancey informed Wood that the request for the custom orthotics had not been approved, "due to [his] obesity." *Id.* at 19, 20; *see also id.* at 22 ("denied my custom orthotics by an 'approving agent' due to my obesity.") (Grievance No. DCC-19-REG-00344).

11. Wood was seen by the medical unit on September 19, 2019, and the notes reflect that he complained of "neck & back pain." *Id.* at 19. The notes also reflect that Wood was "ambulatory" with "no distress noted." *Id.*

12. In Grievance No. DCC-19-REG-00344, dated October 7, 2019, Wood complained that he was "not allowed to have a copy of the UMD communication telling Doctor Yancey that an 'approving agent' [had] denied [his custom orthotics] due to [his] obesity. The orthotics were recommended and prescribed by Doctor Adams, Podiatrist. [Wood] state[d] that this is an

---

[3] It appears from the context in which it is used that "UMD" is an acronym for a provider's employee, outside of the DCC medical unit, that approves certain medical provider requests. *See, e.g., Pollard v. Grace Med. Ctr.*, No. CV PJM-21-0636, 2022 WL 3599141, at *10 (D. Md. Aug. 23, 2022) (as a Utilization Management Medical Director ("UMD"), Dr. Dorsey "reviews and provides approval for requests for specialized services" on behalf of the provider, Corizon, and was not an on-site medical provider).

[4] The notes for August 8, 2019, also indicate that Wood informed the medical unit that he had chronic right foot and ankle pain since 1989 when he had fallen off a ladder while in the Navy. *Id.* at 13, 14.

5

important communication that [he was] entitled to [whether] it is in [his] medical record or not. It pertains to [his] medical history." *Id.* at 25.

13. In Grievance No. DCC-19-REG-00347, dated October 7, 2019, Wood complained that "on September 11, 2019, Doctor Yancey denied [him] custom orthotics, which were recommended and prescribed by the Department of Corrections podiatrist, as well as [his] personal podiatrist. [Wood] state[d] they are needed because of a pre-existing condition from an injury [he] suffered in the Navy. [Wood] state[d] the medical department cannot deny an orthotic needed for a pre-existing condition." *Id.* at 32. [5]

14. On November 5, 2019, Acting Warden J. Halsey-Harris issued a Level I response, which determined the grievance unfounded stating that the "investigation into [Wood's] complaint indicates that the orthotics were a recommendation from the podiatrist. All recommendations have to be approved from Armor Corporate, it was denied due to obesity; and without prior or sustained weight loss, it would be futile." *Id.* The Level I response further found that "the copies of the UMD cannot be given because it is not part of your content of your health records." *Id.* The response also stated that the "results of the informal process reveal that Nurse Manager T. Stewart, RN, responded to [Plaintiff] informal complaint, DCC-19-INF-03056. Nurse Stewart advised

---

[5] In his brief in response to the Motion, Wood references Grievance No. DCC-19-REG-00347 and Written Complaint No. DCC-19-INF-02834 ("Informal Complaint"). Dkt. 47 at 7. Grievance No. DCC-19-REG-00347 is discussed *infra*, and it is evident that Defendant Herrick was not involved with the denial of that grievance. In the Informal Complaint, Wood stated that he wrote a request, which "Keys" responded to on August 19, 2019. Again, there are no allegations in the SAC or Wood's documents that connect Defendant Herrick with this Informal Complaint. To the contrary, Wood's documents establish that he was not involved with either the Informal complaint or the related grievance, No. DCC-19-REG-00347. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) ("[I]f a plaintiff 'attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim.'") (quoting *Thompson v. Ill. Dep't of Prof'l Regul.*, 300 F.3d 750, 754 (7th Cir. 2002)).

[Plaintiff] as discussed, when [Plaintiff was] seen by Doctor Yancey on September 11, 2019, [Plaintiff was] informed of the denial of the insoles by the approving agent. [Nurse Stewart] also advised [Plaintiff] that it was recommended to be compliant with [Plaintiff's] weight loss to help [Plaintiff] with [his] issue." *Id.* The response also stated, "As discussed on October 18, 2019, [Plaintiff] wanted a chart of [his] BMI showing that [he was] obese; a copy is included with this response." *Id.*

15. The Level II response by either the Health Services Director, or Chief of Operations for Health Services, dated December 4, 2019, upheld the denial of the grievance. *Id.* at 26. The Level II response stated that "the UMD communication is not part of [Wood's] medical record; therefore, [he] did not receive a copy of the documentation." *Id.* The Level II response also stated that "the DCC physician has the discretion to discontinue or modify recommendations from the offsite specialists. It is reported that Dr. Yancey advised you of the alternative regarding your orthotics." *Id.* The Level II response was not issued by Defendant Herrick. Dkt. 19 ¶ 21 ("[Wood] was dissatisfied with this response [Level I] and filed the appeal to [VDOC] Health Services [Level II] in which *J. Dillon* denied the appeal") (emphasis added).

16. In a three-page letter dated October 14, 2019, sent to the Warden (Tammy Brown), Plaintiff's wife, Allison Kay Wood, alleged that the UMD Coordinator was retaliating against Wood, *id.* at 38, and complained about Wood's medical care. She referenced Wood's mental depression; PTSD; the use of metal cuffs instead of flex-cuffs; that "Dr. Yancey had "denied [Wood] custom orthotics . . . recommended by the DOC Podiatrist and . . . his personal podiatrist prior to incarceration;" his big toe callous; flat feet; back pain; and knee. *Id.* at 38-40.

17. In a Memorandum dated October 18, 2019, L. Ray, Health Services Administrator, DCC, reported her investigation into Wood's medical treatment at DCC and, with regard to

7

Wood's foot pain, she found that

> Mr. Wood was evaluated by the on-site Podiatrist secondary to reported bilateral foot pain and there was a recommendation for shoe orthotics. All consult recommendations are submitted for approval from corporate. The request was submitted and denied by the central approver. Reason cited was the offenders morbid obesity. The central approver stated that intervention would be futile without prior and sustained weight loss by Mr. Wood. This request for approval and the resulting response is dated 8/15/2019.
>
> The denial was not the decision of the Deerfield Medical Team, including Dr. Yancey, or any other Deerfield physician. There is nothing factual which supports the allegation of retaliation or targeting of Mr. Wood.

*Id.* at 41.[6]

18. In a November 11, 2019 letter to Defendant Herrick and two non-defendants, Wood's wife addressed several of the same issues as the October 14, 2019 letter. *Id.* at 43. Regarding the custom orthotics, she stated that Plaintiff "is being denied custom orthotics even though he has a preexisting condition and a preexisting injury from the Navy that is well documented from not only his personal physician, but from the DOC podiatrist, Dr. Adams," and characterized the reason for the denial, obesity, as "absurd." *Id.* at 43, 44.

19. On November 12, 2019, Defendant Herrick wrote a letter to Plaintiff. The letter stated that Health Services, "had received an inquiry from [Plaintiff], through the Governor's Office, regarding [his] medical care on October 30, 2019." *Id.* at 45. The letter referenced "being denied a flax [sic] cuff order, a medical device that would aid in your weight loss, custom orthotics, knee surgery, and copies of your medical records." *Id.*[7]

---

[6] Dr. Adams was the consulting physician referenced in Ray's Memorandum. Dkt. 3-1 at 150 (November 14, 2019, "Health Services Consultation Report" form referencing Dr. Adams, Podiatrist, as the "Consulting Physician"); *see also id.* at 84, 104, 141, 151 (same, different dates).

[7] Wood argues in his statement of facts that Defendant Herrick knew about his wife's letter, that he was writing to Wood based upon his wife's letter, and that Herrick had access to his medical files. Dkt. 47 at 5. The plain language of the letter indicates that "Health Services received an inquiry from you, through the Governor's office, about your medical care on 10/30/19." Dkt. 3 at 45. The document upon which Wood relies, does not support his assertion and is inconsistent with

20.     In the November 12 letter to Plaintiff, Defendant Herrick stated that

> [b]ased upon the information provided and communication with your institution's medical department, it was reported that you do not have a medical indication for flex cuff usage at this time. The provider onsite recommended weight loss instead of orthotics. You currently have a referral for physical therapy for your back, referral for your knee condition, and a referral to see an Audiologist. Also, you have received all requested medical record copies.

*Id.* Defendant Herrick concluded the letter by directing Wood to "submit a sick call request for further evaluation of your medical needs and treatment plan. You are encouraged to follow the recommendations of the health care team as they are best suited to provide your medical care." *Id.*

21.     Wood alleges that Defendant Herrick was responsible for investigating the Level II grievances he had filed. However, in the SAC, Plaintiff does not identify specific grievances that Herrick responded to. Dkt. 19 57.[8]

---

his argument since Herrick is referring to a letter from Wood, not his wife. *See Goines*, 822 F.3d at 166 ("[I]f a plaintiff 'attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim.'") (quoting *Thompson*, 300 F.3d at 754). For purposes of this motion, the Court assumes that Defendant Herrick had read both letters even though Wood's argument is negated by his own exhibit. The letter, however, does not support the inference that Defendant Herrick had access to Wood's medical files or grievances, only that he had communication with the DCC medical department. *See SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)(the light most favorable to the plaintiff does not require the Court to accept "'unwarranted inferences, unreasonable conclusions, or arguments'").

[8] In the SAC, Wood alleges and argues that Defendant

> Herrick is the Health Services Director VDOC and is responsible for investigating Level II grievances written by inmates such as [Wood]. When [Wood] continued to not receive care for his feet and ankle he wrote the Level II grievance *in which Herrick would have had to investigate the grievance* as he stated he did which would have revealed that [Wood] was ordered the medical boots and orthotics by a specialist for his serious feet conditions, was approved for the boots by the VDOC and medical staff was denying the boots and orthotics.

Dkt. 19 ¶ 21 (emphasis added); *see also Id.* at 57. The SAC is referring to regular grievance No. DCC-19-REG-00344, dated October 7, 2019, which concerned Wood's complaints regarding the custom-made orthotics. Dkt. 3 at 22. The signature on Defendant Herrick's November 12, 2019 letter bears no resemblance to the signature on the Level II response. Dkt. 3 at 26, 45. The Level II response appears to be that of Jeff Dillman. In his original complaint, which Plaintiff appears

9

22.  Wood saw Dr. Adams again on November 14, 2019, and February 13, 2020. Dr. Adams again recommended orthotics and administered steroids. Dr. Adams noted that Wood had previously used an ankle brace but she did not order an ankle brace. *Id.* ¶¶ 24, 26.

23.  Wood was provided with orthotics on July 2, 2020, but he alleges these provided little relief because of continuing problems with his ankles. *Id.* ¶ 27.

24.  In February and April 2021, Wood saw Dr. Harris and discussed researching the need for an ankle brace. Dr. Harris also treated wounds on Wood's feet. *Id.* ¶¶ 29–30.

25.  In May 2021, Wood saw Dr. Adams, who noted that the orthotics helped minimally and recommended x-rays of his feet and ankles. Wood had multiple medical visits over the ensuing months, but x-rays were not ordered during those visits. X-rays were eventually taken in August 2021, which showed soft tissue swelling, dorsal navicular osteophyte, bone spurs, hammer toe deformity, and degenerative changes of the mid-foot. *Id.* ¶¶ 32–37.

26.  In October 2021, Wood was referred to an orthopedic foot specialist, and on October 11, 2021, the outside orthopedist diagnosed him with posterior tibial tendon dysfunction 4 ("PTTD") and recommended an ankle brace. Dr. Harris ordered the brace on October 12, 2021. *Id.* at ¶¶ 41–42.

27.  Wood was seen by a medical provider on November 9, 2021, and the provider recommended custom orthotic boots and insoles. In January 2022, Dr. Harris discontinued the orders for the ankle brace and orthotics. *Id.* ¶¶ 43–45.

---

to have sworn to, Dkt. No. 1-3, he alleged that "Jeff Dillman . . . is the Health Service Director and re[s]ponsible for the Level II review[] o[f] all the evidence and decision from that evidence." Dkt. No. 1 at ¶ 24. Accordingly, Plaintiff's own filings do not support his assertions, and in fact are contrary to his allegations against Defendant. *See Goines*, 822 F.3d at 166 ("if a plaintiff 'attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim.'").

10

29. In March 2022, again, an ankle brace was ordered for Plaintiff. In June 2022, Plaintiff received the ankle brace and alleges this provided significant relief. Plaintiff further states he later received the orthotics at an unspecified date. *Id.* ¶¶ 46, 49, 53.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of a complaint," but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Accordingly, in reviewing a motion to dismiss, the Court must "accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff." *Coleman v. Maryland Ct. of App.*, 626 F.3d 187, 189 (4th Cir. 2010), *aff'd sub nom.*, *Coleman v. Court of App. of Md.*, 566 U.S. 30 (2012). The Court must also "draw all reasonable inferences in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (internal quotation marks and citation omitted). The court, however, does not "accept as true a legal conclusion couched as a factual allegation." *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014). Nor does the Court accept 'unwarranted inferences, unreasonable conclusions, or arguments.' *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014)."

To avoid Rule 12(b)(6) dismissal, a complaint must contain sufficient factual allegations "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To qualify as plausible, a claim needs sufficient factual content to support a reasonable inference of the defendant's liability for the alleged misconduct. *See id.*; *Twombly*, 550 U.S. at 556. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). The factual allegations must be sufficient to "raise a right to relief above the speculative level" so

11

as to "nudge[] the[ ] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.[9] Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "At bottom, determining whether a complaint states . . . a plausible claim for relief . . . will 'be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

### III. ANALYSIS

Plaintiff alleges that Defendant violated his Eighth Amendment rights because Defendant was deliberately indifferent to Plaintiff's "serious medical [podiatry] conditions and [Plaintiff's] need for medical boots and orthotics" because Defendant did not provide Plaintiff "proper, timely, and adequate care, or corrections to his-medical care," which caused Plaintiff to suffer "physical, mental, and emotional injury and harm, and cruel and unusual punishment through the intentional infliction, and wanton infliction of pain and suffering prohibited by the 8th Amendment." Dkt. 19 ¶ 62. Defendant Herrick's Motion asserts that Plaintiff does not allege a viable Eighth Amendment claim for deliberate indifference to a serious medical need, and thus all claims against him should be dismissed for failure to state a claim. Dkt. 43 at 5-6. Specifically, Defendant argues that Plaintiff's claim against him is premised on his "supervisory and administrative role" in the VDOC

---

[9] Although "[a] document filed *pro se* is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted), the Fourth Circuit has "not read *Erickson* to undermine *Twombly*'s requirement that a pleading contain more than labels and conclusions," *Giarratano v. Johnson*, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (dismissing *pro se* complaint); *accord Atherton v. District of Columbia Off of the Mayor*, 567 F.3d 672, 681-82, (D.C. Cir. 2009) ("A *pro se* complaint . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (first quoting *Erickson*, 551 U.S. at 94; then quoting *Iqbal*, 556 U.S. at 679)).

and that *respondeat superior* is not a basis for liability "under [Section] 1983 for the actions of his subordinates," Dkt. 43 at 6; nor did he have either

> actual or constructive knowledge that [his] subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Id.* (quoting *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

In response, Plaintiff argues that Defendant "had full knowledge of the excessive risks of harm to [Plaintiff] due to the investigation with the Medical Dept and [Defendant]'s access to all of [Plaintiff]'s medical files and th[]e Grievance information and log #'s." Dkt. 47 at 5. Plaintiff also argues that Defendant had "full knowledge of the excessive risks of harm" due to the denial of the custom orthotics through his investigation with the Medical Dept," his access to Plaintiff's "medical files," and that Defendant was aware via the Governor and Wood's wife's "emails to [Defendant]," about the conduct of the physicians. *Id.* at 5, 9.[10] As noted above, based upon the SAC and the documents Plaintiff has submitted, Defendant's only direct involvement with the

---

[10] In his brief in response, Plaintiff argues Defendant is liable because he violated his duty under the Eighth Amendment to "provide humane conditions of confinement by ensuring adequate food, clothing, shelter and medical care" because the denial of the orthotics denied Plaintiff "humane conditions" and violated the cruel and unusual clause of the Eighth Amendment. Dkt. 47 at 7 (quoting and citing *Farmer v. Brennan*, 511 U.S. 825, 822 (1994)). To the extent Plaintiff is attempting to amend his complaint to raise a claim different than the deliberate indifference to a serious medical need claim he raised in the SAC, he may not do so via his brief in opposition. *Hurst v. District of Columbia*, 681 F. App'x 186, 194 (4th Cir. 2017) (explaining that "a plaintiff may not amend her complaint via briefing") (citing *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)); *Couch v. City of Virginia Beach*, 768 F. Supp. 3d 741, 748 (E.D. Va. 2025) ("It is well-settled that 'a complaint may not be amended by the briefs in opposition to a motion to dismiss.'") (quoting *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 917 n.9 (E.D. Va. 2004) (citation omitted)).

13

denial of the custom made orthotics was his November 12, 2019 letter, which recounted in a summary manner what had occurred. Further, it is clear from the documents Plaintiff submitted, that Defendant Herrick was not involved with either Grievance No. DCC-19-REG-00344 or Grievance No. DCC-19-REG-00347.

*A. Deliberate Indifference*

Underlying Plaintiff's theory that Defendant Herrick failed as a VDOC administrator is his Eighth Amendment claim that he was denied adequate medical care in prison. This requires a plaintiff to allege two distinct elements. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (plaintiff must "allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs"). First, Plaintiff must allege a sufficiently serious medical need that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). The Court will assume that Plaintiff here has alleged a serious medical injury for purposes of this motion.

Second, a plaintiff must allege that the defendant was deliberately indifferent to his serious medical need. *Farmer*, 511 U.S. at 837. An assertion of mere negligence or even malpractice is not sufficient to state an Eighth Amendment violation. *See Estelle*, 429 U.S. at 106. Instead, "an official acts with deliberate indifference if he had actual knowledge of the prisoner's serious medical needs and the related risks, but nevertheless disregarded them." *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018). Deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). Absent exceptional circumstances, a plaintiff cannot establish a cognizable deliberate indifference claim if there exists a *mere disagreement*

14

between the plaintiff and the prison official over the proper medical care. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *see also Hixson v. Moran*, 1 F.4th 297, 303 (4th Cir. 2021) ("disagreement among reasonable medical professionals is not sufficient to sustain a deliberate indifference claim"); *see also Estelle*, 429 U.S. at 106 ("a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment . . . [and] does not become a constitutional violation merely because the victim is" detained).[11]

### B. Respondeat Superior

A claim based solely on a defendant's position as a supervisor fails under the doctrine of *respondeat superior*, which is generally inapplicable to Section 1983 lawsuits. *Baker v. Lyles*, 904 F.2d 925, 929 (4th Cir. 1990) ("The doctrine of respondeat superior generally does not apply to § 1983 suits.") (citing *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694 n.58 (1978)); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating "'liability will only lie where it is affirmatively shown that the official charged *acted personally* in the deprivation of the plaintiff's rights. The doctrine of respondeat superior has no application under this section.'") (citation omitted, emphasis added). A public administrator "may be liable in their individual capacity[y] only for their personal wrongdoing or supervisory actions that violated constitutional norms." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). As further noted in *Evans v. Chalmers*, 703 F.3d 636, 660-61 (4th Cir. 2013), *Iqbal* held "that 'a supervisor's mere knowledge' that his subordinates are engaged in unconstitutional conduct is insufficient to give rise to liability; instead, *a supervisor can only be held liable for 'his or her own misconduct*.'"

---

[11] The Eighth Amendment does not require that an incarcerated person receive "unqualified access to health care" of his choice. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A prisoner's right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977).

*Id.* at 660-61 (emphasis added) (quoting *Iqbal,* 556 U.S. at 677); *see also King v. Rubenstein*, 825 F.3d 206, 224 (4th Cir. 2016). For supervisory liability, the plaintiff "not only must demonstrate that the prisoners face a pervasive and unreasonable risk of harm from some specified source, but he must also show that the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'" *Slakan*, 737 F.2d at 373. It is insufficient merely to show deliberate indifference to a serious medical need on the part of the subordinate physicians. *See Boyce v. Alizaduh*, 595 F.2d 948 (4th Cir. 1979) (holding no supervisory liability despite potential deliberate indifference claim against subordinate physicians).

To prevail on a claim for supervisory liability, a plaintiff must satisfy the so-called "*Shaw* elements":

> (1) that the supervisor had actual or constructive knowledge that [his] subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw*, 13 F.3d at 799). Defendant, as an administrator, may defer to the medical judgment and treatment decisions of trained medical personnel. *See, e.g.*, *Iko v. Shreve*, 535 F.3d 225, 242 (4th Cir. 2008) (noting that where a prisoner is under the care of medical experts a non-medical prison official will generally be justified in believing that the prisoner is in capable hands); *see also Miltier*, 896 F.2d at 854 (denying supervisory liability claims where non-medical supervisory staff may rely upon expertise of trained medical providers).

Here, the SAC, along with the exhibits submitted, do not demonstrate that Defendant—a non-medical administrator—had any involvement in any decision regarding Plaintiff's medical treatment or care. Plaintiff alleges as the basis for Defendant's liability the denial of two

16

grievances, Grievance Nos. DCC-19-REG-00344 and No. DCC-19-REG-00347. In his SAC, however, Plaintiff admits that Jeff Dillman, not Defendant, was the VDOC official that denied the Level II appeal in Grievance No. DCC-19-REG-00344. *See* Dkt. 19 ¶ 21. Further, as discussed *supra*, the documents submitted by Plaintiff submitted in support of his allegation that Defendant issued the response in Grievance No. DCC-19-REG-00347 establish that this allegation is untrue. Again, for the second grievance, Dillman issued that response, not Defendant.

The sole action that Defendant Herrick took with regard to the Plaintiff's complaints about being denied orthotics was writing his November 12, 2019 letter to Plaintiff. For purposes of this motion, the Court assumes that Defendant knew of the October 14, 2019 and November 11, 2019 letters from Plaintiff's wife, and the denials of the grievances in Grievance Nos. DCC-19-REG-00344 and No. DCC-19-REG-00347. The Court will also assume that Defendant had communications with medical personnel at DCC. The Court, however, will not assume that Defendant had access to all of Plaintiff's medical files. There is no indication in Defendant's letter to Plaintiff that he had any such access. Accordingly, Plaintiff's argument that Defendant had this access is an unwarranted inference, unreasonable conclusion, and an unreasonable argument. *See Estate of Billups v. Baker*, 2023 WL 2333886, at *3 (E.D.N.C. Mar. 2, 2023) (rejecting plaintiff's claim that defendant had actual knowledge from decedent's prior history "where it calls for the unreasonable conclusion that a supervisor automatically acquires *all* the knowledge his subordinates possess"). The letter only indicates that Defendant had communications with the DCC medical department. Moreover, even if Defendant had access to the medical files, he would have simply been presented with different opinions as to the proper course of treatment for Plaintiff's feet. Such access would not have provided Defendant with either actual or constructive knowledge that the doctors treating Plaintiff were engaged in conduct that posed "a pervasive and

17

unreasonable risk" to Plaintiff.  Defendant would have only known that there was a difference of opinion between medical providers.  Many courts have ruled that a mere difference in medical opinion is not actionable under the Eighth Amendment and is insufficient to show deliberate indifference.  *See, e.g.*, *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1142 (10th Cir. 2005) (observing that "a medical difference of opinion . . . is not actionable under the Eight Amendment");  *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006) (finding that a mere difference of opinion between doctors is insufficient to show deliberate indifference).  In other words, the deliberate indifference standard "is not satisfied by . . . mere disagreement concerning '[q]uestions of medical judgment.'"  *Germain v. Shearin*, 531 F. App'x 392, 395 (4th Cir. 2013) (quoting *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975)).  "[A] prisoner does not enjoy a constitutional right to the treatment of his or her choice" so long as the medical treatment provided is adequate.  *De'lonta v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013).

In sum, based upon the SAC and Wood's submissions, the Court cannot conclude that Defendant had actual knowledge that Plaintiff's medical providers were engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to Wood.  Further, Defendant's response to his knowledge of Plaintiff's medical treatment did not show that he was deliberately indifferent to Wood or that he tacitly authorized any "offensive practices" and Defendant's actions do not constitute an "affirmative causal link" between his action/inaction and Plaintiff's alleged constitutional injury.  Accordingly, Plaintiff fails to state a claim for supervisory liability and deliberate indifference and his claims against Defendant will be dismissed.

## IV. CONCLUSION

Accordingly, for the reasons stated above, it is hereby

**ORDERED** that Defendant Herrick's Motion to Dismiss, Dkt. 41, is **GRANTED**; and it is

**FURTHER ORDERED** that all claims against Defendant Herrick are hereby **DISMISSED** without prejudice; and it is

**FURTHER ORDERED** that Plaintiff show cause within twenty-one days as to why Defendant Adams should not be dismissed without prejudice for lack of service; and it is

**FURTHER ORDERED** that if service on Defendant Adams through this Order is unsuccessful and Defendant Adams is not otherwise served within 90 days of this order being entered, the defendant will be dismissed from the instant action without prejudice pursuant to Federal Rule of Civil Procedure 4(m); and it is

**FURTHER ORDERED** that Defendants Harris, Marinos, and Sharma either file a motion for summary judgment or other dispositive motion within thirty (30) days of the date of this Order or expressly decline to do so; and it is

**FURTHER ORDERED** that Defendant Yancey, who was served but has not yet appeared in this matter, notify this Court if he has counsel or is intending to proceed by counsel within fourteen (14) days of this Order; and if Defendant Yancey is intending to proceed by counsel he must notify this Court of that intent and provide the name of his counsel within; and if Defendant Yancey intends to proceed *pro se*, then he must also, within fourteen (14) days of this Order, notify the Court of that intent.

The Clerk is directed to send a copy of this Order to Plaintiff, all counsel of record for Defendants, and to Defendant Yancey, proceeding *pro se*.

It is SO ORDERED.

Entered this 22 day of August 2025.

Alexandria, Virginia

/s/
Rossie D. Alston, Jr.
United States District Judge